[Civ. No. 21908. Second Dist., Div. Two. Mar. 1, 1957.]

Estate of MAHALA M. BOYD, Deceased. JANE BOYD MUDD, Appellant, v. MARTHA B. WHITE, Respondent.

Bailey & McWhinney and Rufus Bailey for Appellant.

Hunter & Liljestrom and Harold J. Hunter for Respondent.

MOORE, P. J.—This controversy arose out of a petition filed by the administratrix with will annexed to determine heirship.

The question involved is whether oral testimony is admissible to prove the attending facts and circumstances as to the family relations of the testator in order to determine the objects of the testator's bounty.

Mahala M. Boyd deceased on December 23, 1950 at the age of 83. Her holographic will dated September 4, 1948, was duly admitted to probate. Martha B. White, her daughter, was appointed administratrix with will annexed and appropriate letters were issued to her. The estate was appraised at a sum in excess of $62,000. The decedent also had a son, James F. Boyd, who predeceased his mother, but left two surviving daughters, Margaret Allison Howard, and Jane Boyd Mudd, appellant herein. By reason of the fact that Margaret had not had any share of decedent's estate and was not mentioned in the will, she was awarded one fourth of the residue as a pretermitted heir. (Prob. Code, § 90.) But it was otherwise with Jane Boyd. She was mentioned in the will of her

grandmother; was awarded property to a limited extent, and because she was dissatisfied, she filed her response to the petition to determine heirship and claimed to be entitled to the specific bequests made by the will "together with one-fourth of the residue together with the life estate set forth in the remaining one-half of the residue of said estate as set forth in paragraph five of said will."

After trial, findings and conclusions were waived and the court adjudged that under the terms of the will* of decedent, (1) the diamond ring mentioned in paragraph 1 will pass to Morna Knipe; (2) the diamond referred to in paragraph 2 to pass to Helen Boyd; (3) all the furniture in decedent's home at her death, except the love seat and two roseback chairs to be distributed to Jane Boyd Mudd; (4) the remains of decedent's silver including her mother's silver tea pot set and

---

*"I Mahala M. Boyd being of sound mind and all my mental faculties do here by make my last will and testimony and declare all previous wills void.

"1. My diamond ring I ~~am~~ now have in my possition I give to my neice Morna Hickam Knipe as an expression of my love for her and appreciation of all she has meant to me thru the years.

"2. My other diamond that Helen Boyd has in her possession and was given to her to wear as long as she was in the family, to surrender to the family when she decided to discontinue all connections with said family of her husband James F Boyd. This she did less than a year after the death of said James F. Boyd.

"3. To my Grand daughter Jane Boyd Mudd I give any of the furtuniture in the house including all my bed room furniture, rug, & chairs, also the remains of my silver including my mother's silver tea pot set, the silver forks marked M. M. 1894 are to go to my great grand daughter Mary Ann Mudd.

"4. What is left of my insurance policy to be put in a ~~trust~~ savings accts of Brian David Mudd & Mary Ann Mudd to be equally divided.

"5. My traveling case to Dove Allen
 [another page]
"All the ~~rest~~ remains of my possessions including the house in which I live and already given to her as her own, the diamond held by the aforesaid Helen Boyd. All the family furniture that I have held and cherished all these years including all the furniture pictures rocking chairs & table in ~~the~~ her guest room in her home. Also the love seat & two rose back chairs in my living room and the tip top table in her dining room. This furniture I have collected from the Boyd and Meek families thru many years had it all restored, & refinished and done so with money I made by keeping roomers and boarders and money given me by my father and husband for spending money These antiques are to be held thru said Martha Whites life time and at her death to be given to Jane Boyd Mudd beleiving she will appreciate them and keep them in the family thru her children.

 ~~Signed Mahala M. Boyd~~
 Sept
 Signed
 Mahala M. Boyd
 Sept 4th 1948"

the silver forks marked "M.M. 1894" to be distributed to decedent's great granddaughter, Mary Ann Mudd; (5) any proceeds of testatrix' insurance policy referred to in paragraph four of the will to be distributed to Brian David Mudd and Mary Ann Mudd, share and share alike, by depositing same in their savings accounts; (6) decedent's traveling case, mentioned in paragraph five to be distributed to Dove Allen; (7) all the family furniture and antiques of decedent at her death, except that distributed under paragraph three of the will, but including the love seat and two roseback chairs, the furniture, pictures, rocking chair and table which were in the guest room of Martha B. White at decedent's death and the tiptop table in Martha's dining room at decedent's death, mentioned in paragraph five of the will to be distributed to Martha B. White for life, with remainder to Jane Boyd Mudd; (8) Margaret Allison to get one-fourth of the entire estate; (9) three-fourths of the residue to be distributed to Martha B. White.

Appellant is displeased with such judgment and seeks a reversal on the grounds that the court erred in admitting testimony in that it added to the terms of the will. She contends that while paragraph 5 provides that certain furniture and heirlooms "are to be held thru said Martha White's lifetime and at her death to be given to Jane Boyd Mudd, believing she will appreciate them and keep them in the family thru her children," yet there are no words in the last-quoted sentence of the will designating to whom the property is to be given. This, despite appellant's immediate observation that the same paragraph provides that "these antiques" are to be given to Martha White for her lifetime with remainder to appellant.

It must be remembered that the instrument in question is a holographic will, authored by a testatrix of 81 years, without an excess of education. It is not required that in writing her own will she must be held to the strict use of technical terms and if she had used them her use would not be binding. (*Estate of Olsen*, 9 Cal.App.2d 374, 378 [50 P.2d 70].) But in such cases, the court may investigate her intention by hearing pertinent testimony. (*Estate of Pierce*, 32 Cal.2d 265, 274 [196 P.2d 1].) When an uncertainty appears on the face of the will, it is fundamental that the testator's intent be derived not only from the will itself but also from the circumstances under which it was executed. (Prob. Code, § 105; *Estate of Pierce, supra*, 268) ; that is to

say, the court should admit evidence of circumstances preceding the execution of the document. (*Ibid.*, p. 274.) In *Estate of Monticelli*, 107 Cal.App.2d 90 [236 P.2d 661], the court admitted testimony to prove that the testator wrote the word "mother" under the devisee's maiden name, then received evidence that testator had written the same name on a bank signature card as his mother's maiden name. This was followed by documentary proof that a woman of the same name as the devisee had taken the testator when 11 days old from a foundling home and reared him. The judgment for the devisee was affirmed. In *Estate of Hotaling*, 72 Cal.App.2d 848, 857 [165 P.2d 681], the testator bequeathed his St. George Hotel. The court allowed extrinsic evidence as to testator's meaning and intent in order to identify the property specified in the will. The judgment was affirmed. But in *Estate of Nunes*, 123 Cal.App.2d 150 [266 P.2d 574], where the will left a bequest to "Joe E. Nunes, a nephew of mine," one Joe E. Nunes lived on the testator's ranch and was not sanguineously related to the testator. He attempted to prove that testator referred to him as his nephew in conversation with the attorney who drafted the will and that he was the party intended by the clause that bequeathed the property. The rejection of his proof required a reversal of the judgment.

 Inasmuch as the instant will referred sparingly to her daughter Martha White but repeatedly to "her," it was legal and sound judgment to admit testimony to explain the use of that pronoun as referring to respondent. When Mrs. Boyd and her husband came to Los Angeles, they bought the property known as 7164 Clinton Street, gave it to respondent and had its title put in respondent's name. Proof of that detail explained the first sentence of page 2 of the will, whereby she bequeathed "the remains of my possessions, including the house in which I live and already given to *her* as *her* own." (Italics added.) Proof that the title to 7164 Clinton Street stands in respondent's name leaves no doubt that "her" in page 2 referred to respondent. Also, the testimony of respondent, and Morna Knipe is conclusive that the family furniture includes "all the furniture pictures rocking chair and table in the guest room" of respondent's home. Also, in testatrix' home "the love seat and two rose back chairs in my living room and the tip top table in *her* dining room" are to be "held thru said Martha Whites life time and at her death to be given to Jane Boyd Mudd." Moreover, the testimony of Martha and Morna established that the family furni-

ture of testatrix, some at 7164 Clinton Street, and some at 7160 in Martha's guest room, was the same furniture and pictures mentioned by the same witnesses in their testimony quoted above. It follows that the pronoun "her" in the phrase "her guest room" could refer to no one other than Martha White and that by testatrix' use of "her" she meant Martha White.

There was no contradiction of the testimony of the two witnesses that the love seat and the two rose back chairs were in testatrix' living room and that the tip-top table was in Martha's dining room. It follows that when testatrix in referring to such items said "and the tip top table in her dining room," she definitely referred to Martha White. She had held the furniture for a long time; had collected it from the "Boyd and Meek families through many years" and evidently cherished the items as favored heirlooms. While by her residuary clause she meant to leave to Martha "the house in which I live and already given to her as her own" and the diamond ring held by Helen Boyd as permanent gifts, the testatrix had a different plan about the "family furniture," the pictures, rocking chair and table in Martha's guest room, the tip-top table in Martha's dining room, the love seat, two rose back chairs in testatrix' living room. These items testatrix clearly intended for Martha to hold and to use during her lifetime but at the latter's death they are to pass to Jane Boyd Mudd as her own property.

■ The foregoing disposes of the issue at bar by resorting to extrinsic evidence. The trial court's interpretation therefore will not be disturbed unless it is unsupported. (*Estate of Hotaling,* 72 Cal.App.2d 848, 853 [165 P.2d 681] ; *Estate of Lewis,* 91 Cal.App.2d 322, 325 [204 P.2d 898].) But a favorable construction of the document based solely upon its contents may also be derived. ■ It is fundamental that a will must be construed as intended by its author. (Prob. Code, § 101; *Estate of Rowley,* 126 Cal.App.2d 571, 575 [272 P.2d 911] ; *Estate of Reith,* 144 Cal. 314, 316 [77 P. 942].) Neither a lack of rhetorical flourish nor the failure to observe grammatical rules will govern its interpretation. (*Estate of Lewis,* 91 Cal.App.2d 322, 325 [204 P.2d 898].) ■ The fact that the testatrix made specific gifts and devised "all the remains of my possessions" indicates an intention to dispose of all her property. Also, the very fact of a will raises the presumption that she intended to make a complete disposition of her possessions. ■ Inasmuch as the document

contained a residuary clause, a court must so construe it as to avoid partial intestacy. (*Estate of Lefranc*, 38 Cal.2d 289, 295 [239 P.2d 617]; *O'Connor* v. *Murphy*, 147 Cal. 148, 153 [81 P. 406]; *Estate of Ottoveggio*, 64 Cal.App.2d 388, 392 [148 P.2d 878].) Partial intestacy is not favored. (*Estate of Northcutt*, 16 Cal.2d 683, 690 [107 P.2d 607].)

Now, in the matter at bar, if a construction of the will be rendered holding that "her" did not refer to Martha White as the residuary legatee of all the "remains" of testatrix' possessions, that would result in a partial intestacy. Appellant contends that the residuary clause does not designate a legatee. No such conclusion can result when the entire document is read as a unit and all parts are so construed as to form a consistent whole. (Prob. Code, § 103.) ▆ To make a consistent whole, terms may be interpolated or transferred. (*Estate of Blalock*, 95 Cal.App.2d 463, 470 [213 P.2d 100].) That decision is especially pertinent for the reason that the residuary legatee was not mentioned on the same paragraph or page as that which expressed the residuary bequest. Merely by writing a will, the testatrix undertook to dispose of her property and thus must have intended to give her possessions to one or more beneficiaries. If such devisees can be reasonably ascertained from the will, the assets of the estate should be distributed to them as directed by the testatrix. (*Ibid.* p. 469.) ▆ The language of the last testamentary disposition made by the testatrix in pertinent terms by considering the relationship of the parties and the proximity of their homes to each other sufficiently describes the residuary legatee. She should not be deprived of her inheritance merely because the testatrix did not possess the powers of a philosopher and linguist accurately to inscribe her wishes. From her words, her intention can be ascertained. When decedent's will is thus interpreted by reasonably construing the language of the instrument so as to make a disposition of her estate by devising it to specific legatees, her will is a success. (*Estate of Blalock, supra,* p. 470.)

▆ Moreover, the words of a will are to receive an interpretation which will give to every phrase some effect, not one which will render its expressions inoperative. (Prob. Code, § 102.) Surely, it will not be contended that it is necessary to hold that the expressions of the testatrix in devising her residuum are wholly inoperative. The thesis of respondent is that she carries out not only the intention of the testatrix, but gives effect to each and every expression

828

of the will. (*Estate of Northcutt*, 16 Cal.2d 683, 688 [107 P.2d 607].)

Appellant relies upon a number of decisions which are readily distinguishable. (*Estate of Kelleher*, 202 Cal. 124 [259 P. 437, 54 A.L.R. 913] ; *Estate of Tompkins*, 132 Cal. 173 [64 P. 268] ; *Estate of Zilke*, 115 Cal.App. 63, 66 [1 P.2d 475] ; *Estate of Wattson*, 66 Cal.App.2d 743, 745 [153 P.2d 87] ; *Estate of De Moulin*, 101 Cal.App.2d 221 [225 P.2d 303] ; *Estate of Lyons*, 36 Cal.App.2d 92, 95 [96 P.2d 1018].) In Kelleher, the letter declared on was not a testamentary disposition. Its meaning was unintelligible even when supplemented with extrinsic proof. The Tompkins Estate discloses an attempt to give the words of the will a contrary meaning by use of a letter written six years prior to the date of the will, not for the purpose of explaining an ambiguity in the will. It was a contradiction of the will *offered for probate.*

In *Estate of Zilke, supra,* the court determined that it was not possible to ascertain the testator's intention from the will itself and that the decree of the trial court was based upon speculation as to the testator's intention. Also, no extrinsic evidence was offered to explain the ambiguity. The terms of the will alone did not disclose the testator's intention. The *Estate of De Moulin, supra,* is not pertinent. In the instant will, there is not a total failure to name a beneficiary. Six are named : Morna Knipe, Jane Boyd Mudd, Mary Ann Mudd, Brian David Mudd, Dove Allen, Martha White.

The judgment is affirmed.

Fox, J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 25, 1957.