161 Cal.App.2d 704 (1958)
Estate of JOHN CONWAY, Deceased. HENRY I. DOCKWEILER, as Administrator, etc., Appellant,
v.
THE SALVATION ARMY (a Nonprofit Corporation) et al., Respondents.
Civ. No. 22961. 
California Court of Appeals. Second Dist., Div. One. 
June 27, 1958.
 Dockweiler & Dockweiler for Appellant.
 Meserve, Mumper & Hughes, Robert A. Stewart, Jr., Cromwell Warner, Jr., and Snyder, O'Neil & Hancock for Respondents.
 FOURT, J.
 This is an appeal from a decree of the probate court determining the persons entitled to distribution of certain real property in the estate of John Conway, deceased.
 The decedent, John Conway, died at the age of 78 years on June 11, 1952, leaving a holographic will executed approximately two weeks prior to his death. Said holographic will was admitted to probate, and its provisions are set forth in their entirety, as follows:
 "May 28th-1952"
 "I will my lot 16 on Spence St L. A to Annie Burke Connors and all their on, 581 East 140 st Bronx New York to William Burke Bronx New York, I will lot 19 and all their on. *706 "
 "Too Margaret Burke Ellicott Bronx New York,"
 I will $1000-00
 I will 1000-00 to Kathlen Smith
 80 Alghney st Buffalo N. York,
 To Resurection School opal & Lorena
 $1000-00, To Resurrection Church I will
 1000-00 for masses for myself "to Mark K. Conway sister in law"
 I will nothing for her aful treatment of my brother in his last illness,
 Got in security first nat bank $7600-00
 Bank america Whtt & Spence 9000.00 at Lincoln Mortgage & Loan 6 & Spring 8300-00, what ever money is left after all
 Expenses are Pd to bee given to Salvation Army & Good will eaquely.
 "To be interred by Cunningham & O'Connor"
 In Calvary Cemitary Grave #6 Sex F#1628
 In Conway Kelly plott with marker
 I was born April 3-1874
 "John Conway"
 918 Spence L.A.""
 The decedent's estate was appraised at a value in excess of $85,000, and included, among other assets, Lot 16, which was improved with a four- family flat and dwelling known as 914-918 South Spence Street, Los Angeles, which parcel was referred to in the estate inventory as Item R-2 and was appraised at $30,000; and an adjoining parcel referred to in the estate inventory as Item R-1 and appraised at $30,000, which parcel was similarly improved with a four-family flat and dwelling known as 922-922 1/2 South Spence Street, Los Angeles, and was comprised of Lots 17, 18 and 19 of the M. L. Wicks Tract, except the southerly 100 feet thereof, or a total area approximately 50 feet by 150 feet.
 The diagram [fn. *] herewith shows among other things, the dimensions and location of the parcels and buildings, and their relation to each other, the extension of the boundary lines of Lots 17, 18 and 19 as they traverse across the property upon which the buildings were constructed. Further it shows the location of the board fence across the east end of the property adjoining the alley, and the general scheme, plan or layout of the property in question. *707
 [Graphic Material Omitted]
 *708
 The public administrator, among other things, proposed distribution of said Item R-1 in its entirety to the heirs or devisees of William Burke. The charities Salvation Army and Goodwill Industries of Southern California contended that devisee Burke was entitled only to the 50 foot rear or easterly portion of Item R-1 adjacent to the alley, which was that portion of Lot 19 which belonged to the decedent at the time of his death. The said charities further contended that the devisee Burke was not entitled to the parts of Lots 17 and 18, consisting of the 100 foot by 50 foot front portion of Item R-1 facing Spence Street, which area they contended belonged to the said charities.
 At the hearing, various documents were offered into evidence by appellant, which documents included a map substantially the same as the diagram herewith, prepared by a licensed surveyor showing the lay-out of the property in question, with improvements; a title company plat of the tract wherein the property is located, showing lot lines, sizes, etc.; Los Angeles County tax bills; a copy of the deed by which decedent acquired the portions of Lots 17, 18 and 19 from another estate; a copy of the court order confirming the sale to him; copies of two quitclaim deeds clarifying his title, five photos showing the physical condition of the property in question; and decedent's will dated September 5, 1951. In each instance, objection was made to the introduction of such evidence and the objection was sustained by the trial court on the basis that there was no ambiguity in the will relating to the disposition of the real property, and accordingly, extrinsic evidence was not admissible.
 The trial court then determined that the terminology in the will "what ever money is left" was ambiguous, and permitted the introduction of extrinsic evidence to explain it, determined that the language used was appropriate to a residuary clause of his entire wealth and estate, and found that the decedent intended to and did dispose of the entire residue of his estate to the said charities, which residue included the northerly 50 feet of Lots 17 and 18.
 It is contended on appeal that the clause devising Lot 19 was, in the circumstances, ambiguous and subject to interpretation by extrinsic evidence showing it was meant to and did pass decedent's interest in Lots 17, 18 and 19; or, if the clause devising Lot 19 did not pass decedent's interests in Lots 17 and 18, he died intestate as to this property.
 The propriety of admitting oral testimony to prove the facts *709 and circumstances as to family relations in a petition to determine heirship was the question involved in Estate of Boyd, 148 Cal.App.2d 821 [307 P.2d 754]. The holographic will which disposed of an estate appraised at a sum in excess of $62,000, was described by the late Presiding Justice Moore (at p. 824) to have been "authored by a testatrix of 81 years without an excess of education." [1] The court stated (at p. 826), "It is fundamental that a will must be construed as intended by its author. (Citing authorities.) Neither a lack of rhetorical flourish nor the failure to observe grammatical rules will govern its interpretation." [2] The court was even more explicit in its comments (at pp. 824-825) in stating, "It is not required that in writing her own will she must be held to the strict use of technical terms and if she had used them her use would not be binding. (Estate of Olsen, 9 Cal.App. 374, 378 [50 P.2d 70].) [3] But in such cases the court may investigate her intention by hearing pertinent testimony. (Estate of Pierce, 32 Cal.2d 265, 274 [196 P.2d 1].) [4] When an uncertainty appears on the face of the will, it is fundamental that the testator's intent be derived not only from the will itself but also from the circumstances under which it was executed. (Prob. Code, 105; Estate of Pierce, supra, 268); that is to say, the court should admit evidence of circumstances preceding the execution of the document."
 [5] In making its determination as to whether there was an intent to create a trust, the Supreme Court in Estate of Sargavak, 41 Cal.2d 314 [259 P.2d 897], reviewed various rules of construction and on the admissibility of extrinsic evidence. Quoting with approval from the language used in Estate of Kearns, 36 Cal.2d 531, 537 [225 P.2d 218], the Supreme Court then (at p. 319) stated the law to be that " 'Section 104 must be read with section 105 of the Probate Code which provides that "when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding ... oral declarations" of the testator as to his intentions.' " [6] The court then went on to state (at pp. 319-320): "As there was an 'uncertainty' on the face of the will the trier of fact may consider such matters 'as the size of the estate, the property involved in the gift, the circumstances of the parties and their relation to each other and to the Testator.' In other words, oral declarations of the testator *710 are not admissible but circumstances may be shown where there is an uncertainty."
 More recently the Supreme Court in Estate of Graham, 49 Cal.2d 333 [316 P.2d 945] was called upon to determine the meaning of "personal property" as used in a will provision leaving a named person a specific bequest of money "and any part of the personal property she may desire" and naming The Salvation Army of California as the residuary beneficiary. The court, after indicating that it was only by the introduction of extrinsic evidence that it could be determined whether a testator was acquainted with the technical sense of the words used, then stated (at pp. 337-338), "We do not believe that it can reasonably be inferred that the testatrix used the phrase 'personal property' in its technical sense so that appellant could defeat the gift to the Salvation Army should she elect to do so. Had the testatrix intended to give appellant that election she would have done so directly rather than have made it dependent on the court's concluding that she intended the ambiguous phrase 'personal property' to be taken in its technical sense even though she used it in a context that clearly indicates a contrary intention. Moreover, the testatrix left to appellant only that 'part of the personal property she may desire.' Such language is more appropriate to a gift of personal effects, furniture and furnishings, many items of which a legatee might not want, than to a gift of valuable securities, which ordinarily a legatee would not be expected to reject."
 In Halldin v. Usher, 49 Cal.2d 749 [321 P.2d 746], after reviewing substantial parol evidence introduced relative to the effect of an instrument as a contract or as a testamentary instrument, the Supreme Court commented (at p. 753), "Accordingly it would seem that the words 'whole control' in the present document are not so free from ambiguity as to prevent the court from resorting to extrinsic evidence to ascertain their meaning. That evidence clearly indicates as found by the court that it was not the intention of the parties to leave the survivor destitute and without means of support as might be the case if the construction urged by the plaintiff were adopted."
 [7] In the instant case, it must be remembered that we are construing a holographic will authored by a 78-year-old testator, who could well be described in the language of the late Presiding Justice Moore as "without an excess of education." The decedent had acquired substantial property during *711 his lifetime, and in his will he was very precise in supplying information as to the approximate balances in his various bank accounts together with the means of ascertaining where his funds were on deposit. He had made prior arrangements for his grave and designated whom he desired to have in charge of his interment, and he set forth the addresses of his beneficiaries. In view of the foregoing, we are of the opinion that every effort should be made to determine the intention of the decedent, and to give it effect with the aid of such extrinsic evidence as is available.
 [8] It is true that the word "money" can be used to include real property, but it does not necessarily have to be given this meaning. It is also true that decedent owned only a portion of "Lot 19." [9] The inventory and appraisement indicates that there were certain improvements on Item R-1, which was comprised of the portion of Lot 19 owned by decedent, together with the portions of Lots 17 and 18 owned by decedent.
 We are of the opinion that the description of "Lot 19" is not so free from ambiguity under the circumstances as to prevent the court from resorting to extrinsic evidence to ascertain its meaning. The proffered extrinsic evidence could have a substantial effect upon the meaning intended by the decedent, and in our opinion, it should have been admitted.
 The judgment is reversed, and the matter is remanded for further proceedings consistent with the views herein expressed.
 White, P. J., and Lillie, J., concurred.
NOTES
[fn. *] *. See diagram on the following page.