[Sac. No. 7151. In Bank. July 20, 1961.]

Estate of PEGGY E. KARKEET, Deceased. STATE OF CALIFORNIA, Petitioner and Appellant, v. LEAH SELIX, Individually and as Executrix, etc., Objector and Respondent.

Stanley Mosk, Attorney General, and W. R. Augustine, Deputy Attorney General, for Petitioner and Appellant.

George L. Naylor for Objector and Respondent.

WHITE, J.—The attorney general, in behalf of the State of California, appeals from a decree determining that Leah Selix, respondent herein, is the residuary legatee under the will of Peggy E. Karkeet, deceased, in a proceeding to determine heirship pursuant to section 1080 of the Probate Code.

Peggy E. Karkeet died testate in Tuolumne County, in October 1958 at the age of approximately 60 years. Prior thereto decedent, who had no known kindred, instructed her landlord that Leah Selix, her friend, was to be notified in the event of her death. It appears that there was a very close family relationship between decedent's and Leah's families, their mothers having first become friends in 1905. Decedent and her mother had resided with Leah's family from time to time. Leah had known the decedent since 1920, and their friendship also "was a very close relationship."

After the decedent's death there was found on her dresser in her room, an envelope on which was typewritten Leah's name, address and telephone number. Also on the envelope, in decedent's handwriting, were the words: "In case of my death—Peggy." The envelope contained the original of the following holographic writing, which appears to have been the only testamentary document executed by the decedent:

"Sonora, Calif.

To Whom It May Concern

This is my authorization to Miss Leah Selix, 832 Green St., San Francisco, California, to act as executrix of all and any property and personal effects (and bank accounts) to act without bond or order of Court.

Signed this 5th day of May 1956

s/Peggy E. Karkeet

Lisolette Sherrard

Witness"

The decedent left a net estate of approximately $7,000. In addition she and Leah held other property of undisclosed value in joint tenancy.

The above writing was admitted to probate in January 1959, as the last will and testament of deceased, and pursuant thereto Leah was appointed executrix. Thereafter she filed an inheritance tax return in which she claimed to be the sole legatee, but the California Inheritance Tax Appraiser refused to certify the return unless a decree was obtained to the effect that Leah was entitled to have the net estate distributed to her.

Leah thereafter filed the instant petition for a decree determining interests in the estate. At the hearing the State of California appeared and contended that the document was effective only to nominate Leah as executrix, that the writing itself made no testamentary disposition of deceased's property, and that since there were no next of kin or heirs at law, the property in deceased's net estate must escheat to the state. It was and is conceded by the state, however, that the document was properly admitted to probate as the last will of decedent.

During the hearing the following offer of proof was made in behalf of Leah by her counsel: "[I]f there is a question in the court's mind as to whether this will on the face of it indicates the intention of the testatrix that Miss Leah Selix should receive the property, and that estate should be distributed to her, then I would like to offer testimony of witnesses which will establish the following points. Number 1, that the testatrix had no relatives, no known relatives; number 2, that petitioner Miss Leah Selix was a very near and dear friend, treated as a sister, and was the most natural object of the bounty of the decedent, and number 3, that the testatrix had indicated prior to the date of this will that she was going to make a will for Leah Selix, and number 4, evidence indicating that the testatrix had the definite understanding in her own mind that an executrix would own the property in the estate, and that the property would belong to her, and her only obligation would be the payment of any debts that there might be. I think that evidence, which is admissible, will clearly establish that that was the understanding that the testatrix had of that term [executrix]." It is further urged that decedent had wage and pension benefits which were payable to her heirs, or, to her executor or executrix, and that such arrangements caused decedent to believe that an executrix takes a beneficial interest in the estate after payment of debts and expenses of administration. No offer was made on behalf of the state as to the nature of extrinsic evidence, if any, which it might produce if given the opportunity.

In rejecting petitioner's proffered extrinsic evidence, the trial judge stated that "the written will must govern unless there is an ambiguity or uncertainty on the face of the will, and the court feels that that does not exist. . . ." The matter was taken under submission and thereafter the trial court filed a written memorandum of opinion ordering a decree in Leah's favor. Among other things the trial judge stated that:

"The rule that the making of a will raises a presumption of an intention to dispose of testator's entire estate is particularly applicable in this case, *because no other reason for the making of this will is apparent.* The will itself does not indicate that the purpose whatsoever of the testatrix is to be subserved by the will other than to place in the hands of Leah Selix the entire estate and to relieve her of any obligation to account to the Court. It would have been pointless for decedent to have made such a will had it been her intention to leave her estate to the State of California or to permit it to escheat. She obviously believed and intended that in executing this will she was disposing of her estate at death and a rational reading of the will indicates that she intended her estate to go to Leah Selix." The trial court further held that: "The provisions with respect to authorizing Leah Selix to act as 'executrix' and the provisions with respect to her acting without bond or court order must be construed together and lead to the reasonable conclusion that the testatrix intended to place all of her property in the hands of Leah Selix without limitation or restriction. . . . Under these circumstances the apparent intention of the testator must prevail over a strictly technical legal meaning of the word 'executrix.' " (Emphasis added.) The court also noted that there is some ambiguity in the legal definition of the term, "executor," and that Webster's Dictionary states that under early English law, an "executor" was the residuary heir of the personal estate, corresponding to the Roman "heres." (Webster's New International Dictionary [2d ed., 1958], p. 892; see also Gavit, Blackstone's Commentaries [1914], pp. 511, 518; 2 Story, Commentaries on Equity Jurisprudence, [14th ed., 1918], note, p. 189; Ehrlich's Blackstone [1959], pp. 442-443.)

The controlling rule is stated in section 101 of the Probate Code, which provides that a will is to be construed according to the intention of the testator. "All other rules of construction are subordinate to this cardinal rule and in its application presumptions are to be indulged which will prevent entire or partial intestacy. (*Estate of Blake,* 157 Cal. 448, 458-459 [108 P. 287].)" (*Estate of Akeley,* 35 Cal.2d 26, 28-29 [215 P.2d 921, 17 A.L.R.2d 647].) The Probate Code provides further in section 102 that where there are "two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." Constructions leading to intestacy in whole or in part are generally rejected where the language of a will may reasonably be construed to

282

dispose of the entire estate. (*Estate of Lawrence,* 17 Cal.2d 1, 7 [108 P.2d 893]; *Estate of Northcutt,* 16 Cal.2d 683 [107 P.2d 607]; *Estate of Beldon,* 11 Cal.2d 108, 111 [77 P.2d 1052]; *Estate of Hoytema,* 180 Cal. 430, 432 [181 P. 645]; *O'Connor* v. *Murphy,* 147 Cal. 148, 153 [81 P. 406].) The foregoing concepts were applied in *Estate of Akeley, supra,* 35 Cal.2d 26, wherein the decedent provided in a holographic will for the disposition of the residue of her estate by three gifts of "25 per cent" each to designated charities. The State of California sought to subject the remaining 25 per cent of the residue to the provisions of the law providing for escheat. In affirming the trial court's determination that it was the intention of the testatrix to dispose of all of the residue of her estate to the three named organizations in equal shares, this court stated at page 29: "The attorney general assumes that the probate court was bound by the mathematical percentages specified by the testatrix and that the use of any other language could not be deemed to create ambiguity with the specified percentages. However, there is no rule of construction which would prevent the court from applying the language of a will in accordance with the manifest intention of the testatrix even though to do so would require an interpretation not in accord with the technical meaning of words used. On the contrary it is the duty of the court so to construe the language that it will conform to the testatrix' intention as disclosed by the will rather than to defeat such intention by strict adherence to the technical sense of particular words. Especially in cases where the will is not drawn by an attorney words which are repugnant to the clear intention disclosed by other parts of the instrument may be regarded as surplusage or restricted in application since to do otherwise would be to defeat the intention. (*Estate of Wood,* 36 Cal. 75.)'' The Probate Code in section 106 also provides that where "it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense,'' technical words in a will are not to be taken in their technical sense.

The attorney general relies on *Estate of Beldon, supra,* 11 Cal.2d 108, to the effect that a testator has the right to make a will which does not dispose of his property except by the laws of succession; that such a will is not the usual one but where the language clearly leads to that result it must be given effect accordingly. But this court has previously indicated that the foregoing statement in the Beldon case is

not applicable where, as in the case now engaging our attention, the testatrix left no surviving heirs. (*Estate of Akeley, supra,* 35 Cal.2d 26, 29-30.)

In view of the foregoing it is reasonable to conclude that the decedent did not intend to make her will, provide for an executrix in the technical sense, and at the same time allow the *whole* of her estate to escheat to the state (see *Estate of Boyd,* 148 Cal.App.2d 821, 826 [307 P.2d 754]); that having prepared the will herself and not being familiar with the more modern technical meaning of the term "executrix" the decedent designated her close friend as such intending that she be the residuary legatee; that in providing that Leah was "to act without bond or order of the Court" the decedent intended that no one else have any interest in the estate. In short, we are persuaded that the paramount rule which requires that wills be interpreted according to the testator's intention, and that such intention be given effect as far as possible (see *Estate of Thompson,* 50 Cal.2d 613, 617 [328 P.2d 1]) constitutes, in the circumstances of the instant case, reasonable grounds for a conclusion that the decedent effectively made a gift of her net estate to her friend, Leah Selix, and that such a result was her manifest intention in the preparation and execution of her will. We cannot say, however, that such a conclusion is compelled as a matter of law from the will itself. A reading of the will, and the provision for an "executrix" in these circumstances may, as stated, justify the foregoing conclusion in the minds of reasonable men, and at the same time justify a different conclusion in the minds of other, equally reasonable men. Where a technical term within a will, used by a testator presumed to be unfamiliar with its strict meaning, is to be construed according to the testator's intent, the mere use of the term may well be deemed to create an uncertainty or ambiguity. (*Estate of Pierce,* 32 Cal.2d 265, 272-273 [196 P.2d 1]; *Estate of Boyd, supra,* 148 Cal.App.2d 821, 824.) Such an ambiguity is to be resolved from the words of the will "taking into view the circumstances under which it was made." (Prob. Code, § 105.)

The court in the case at bar should have considered extrinsic evidence for the purpose of resolving this apparent ambiguity. (*Estate of Sargavak,* 41 Cal.2d 314 [259 P.2d 897]; *Estate of Kearns,* 36 Cal.2d 531 [225 P.2d 218].)

As heretofore noted, an offer of proof by extrinsic evidence was made only on behalf of Leah. We cannot presume, however, that the state could not have successfully rebutted such

proof, or produced its own proof had it been afforded an opportunity to do so.

The judgment is reversed, and the cause remanded for further proceedings in accordance with the views herein expressed. The parties will bear their respective costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.