23 Cal.App.3d 47 (1972)
99 Cal. Rptr. 782
Estate of JACOB J. WOCHOS, Deceased.
WELLS FARGO BANK, as Executor, etc., Petitioner and Respondent,
v.
ROBERT L. WOCHOS et al., Petitioners, Claimants and Appellants.
CHARLES W. WOCHOS et al., Claimants and Respondents.
JOSEPH J. WAVRUNEK et al., Claimants and Appellants.
Docket No. 27680.
Court of Appeals of California, First District, Division Three.
January 25, 1972.
*49 COUNSEL
Freed & Freed, Eli Freed, Demetrios Dimitriou, Cox, Cummins & Rinehart, Bernard F. Cummins, Wilkie C. Courtier, Jacob Karesh and Leonard Shaw for Petitioners, Claimants and Appellants and for Claimants and Appellants.
No appearance for Petitioner and Respondent.
Hoberg, Finger, Brown & Abramson, Ernest J. Hill and John H. Finger for Claimants and Respondents.
OPINION
BROWN (H.C.), J.
This is an appeal from a judgment admitting to probate a will dated December 10, 1962 and codicils dated December 12, 1962 and July 15, 1963, notwithstanding the special verdict of a jury that the testator lacked testamentary capacity on July 15, 1963.
The court also held, in effect, that the provisions of the July 15, 1963 codicil were wholly inconsistent with the dispositive provisions of two codicils dated February 6 and February 7, 1963, and that these codicils were therefore revoked. The documents admitted to probate named two nephews, Richard and Charles Wochos, as beneficiaries of decedent's estate. The two codicils dated February 6 and 7, 1963 (which the trial court held were *50 revoked by the codicil of July 15, 1963) named the decedent's nephews and nieces, approximately 26 in number, as the beneficiaries of his estate.
These nieces and nephews of decedent Jacob Wochos (except respondents Richard and Charles Wochos), and a nephew of Hazel Wochos, have joined in this appeal. They contend, first, that there was substantial evidence presented to the jury that the deceased lacked testamentary capacity on July 15, 1963, and therefore the trial court erred in its judgment notwithstanding the verdict; second, that the trial court erred in holding that the July 15, 1963 codicil revoked the codicils of February 6 and 7, 1963.
An examination of the wills and the codicils, together with references to the testimony relative to decedent's lack of testamentary capacity, will clarify our conclusion that the trial court erred in excluding the codicils of February 6 and 7, 1963 from probate.
We have purposely omitted any detailed summary of the testimony of the proponents of the will and codicils relating to decedent's testamentary capacity on the dates of those documents. (1) We have made this omission because of the well settled rule that all evidence favorable to appellant must be accepted, and if that evidence so viewed is sufficient as a matter of law, the judgment notwithstanding the verdict must be reversed. (See Estate of Hettermann, 48 Cal. App.2d 263, 266 [119 P.2d 788]; Estate of Lingenfelter, 38 Cal.2d 571 [241 P.2d 990].)
The facts: Jacob and Hazel Wochos had been married 46 years. They had no children. Hazel had a nephew, and Jacob had some 26 nieces and nephews. Their joint estate amounted to in excess of $800,000.
On January 23, 1962, Jacob and Hazel executed mutually reciprocal wills. Each will purported to distribute the income of their entire estate to the survivor (including the community share of the other) and named the nieces and nephews as the residuary legatees and devisees, but gave the survivor the power to appoint or make different disposition of the estate. In the event of failure of the survivor to exercise the power of appointment, then the estate was to be distributed to all of the nieces and nephews of both parties after a few bequests to charities.
In December 1962, Hazel filed a divorce action against Jacob. On December 10, 1962, Jacob executed a new will which left his estate to the Wells Fargo Bank in trust for his wife if no divorce action was pending and the remainder to two nephews, Richard and Charles Wochos, the respondents herein. On the same date that Jacob executed this will, a petition for the appointment of guardian of his person and estate was filed on his behalf. On December 12, 1962, Jacob executed a codicil to the will of December 10 to make clear that his wife was to be eliminated as a beneficiary *51 in the event of divorce. Three days after the petition for guardianship had been filed, a hearing was held[*] and Jacob was declared incompetent. Richard Wochos and the San Francisco County Probate Commissioner were named guardians of his person, and the Wells Fargo Bank guardian of his estate.
On December 21, 1962, Hazel Wochos died. A nephew, Robert, who had been disinherited by Jacob's will, on learning of the death of Hazel and of the provisions of Jacob's new will, asked Jacob if he recalled devising his entire estate to Richard and Charles Wochos. According to Robert, Jacob stated that he didn't remember that event and didn't want it distributed that way. Robert further asked his uncle if there was anything that he (Robert) could do to help him as there was so much confusion regarding what the uncle wanted to happen to his estate, and Robert said, "What would you like me to do?" Jacob Wochos replied: "I would like you to help me to prepare some kind of a statement that I would like my estate left as I originally intended." Whereupon Robert said, "How is that?" Jacob Wochos answered, "With all of my nephews and nieces." The codicil dated February 6, 1963 was then prepared and executed by Jacob. The codicil devised the estate to the nephews of Jacob but failed to mention his nieces. Also, Robert became ineligible to receive under the codicil because he signed as an attesting witness. On February 7, 1963, another codicil was prepared to correct these apparent errors. Jacob devised his estate to all of his nieces and nephews, and two persons not named as beneficiaries executed the codicil as witnesses.
On July 15, 1963, Jacob was admitted to a San Francisco hospital with a foot infection which eventually required amputation of his leg. He continued to be hospitalized until his death on April 1, 1964. On the day Jacob was admitted to the hospital, he executed another codicil to his will. This codicil was prepared by the attorney, Raymond Levy, who had prepared the will of December 10, 1962 and the first codicil of December 12, 1962. The codicil of July 15, 1963 was designated as the second codicil. It was, in fact, the fourth codicil. Attorney Levy was not aware that Jacob had signed the other two codicils dated February 6 and 7, 1963.
The codicil of July 15, 1963 reads: "I, JACOB J. WOCHOS, being of sound and disposing mind and memory, and not acting under the undue influence of any person whatsoever, do hereby publish and declare this to be the Second Codicil to my Last Will and Testament dated the 10th day of December 1962:
"FIRST: I do hereby specifically refer to Paragraph FOURTH or [sic] the *52 Last Will and Testament of HAZEL WOCHOS, bearing the date of January 23, 1962; and, relative to Subdivision 2 thereof, I do specifically provide that all of Trust A and all undisbursed income relative thereto shall vest in my estate for the purposes of distribution in accordance with my Last Will and Testament, to which this document is a codicil; and I do specifically appoint my Executor herein, and direct my Executor herein, to collect all of said assets and to distribute the same in accordance with the terms of my said Last Will and Testament.
"SECOND: Except as specifically herein altered, I do re-affirm each and every of the terms and conditions of my aforesaid Last Will and Testament as the same was amended by the codicil dated December 12, 1962.
"DATED: July 15th, 1963."
The trial court held that the will of Jacob Wochos consisted of the will of December 10, 1962, together with the codicils of December 12, 1962, and July 15, 1963, and ordered those documents admitted to probate. The codicils of February 6, 1963 and February 7, 1963 were thus revoked.
We do not agree with the trial court.
Probate Code section 72 provides: "A prior will is not revoked by a subsequent will, unless the latter contains an express revocation, or provisions wholly inconsistent with the terms of the prior will. In other cases the prior will remains effectual so far as consistent with the provisions of the subsequent will;..."
(2a) The codicil of July 15, 1963 expressly republished the will of December 10, 1962 and the codicil of December 12, 1962, but did not mention the codicils of February 6 and 7, 1963. It has been held that a subsequent codicil which expressly refers to the will does not revoke a prior modifying codicil not therein mentioned which is not inconsistent with the subsequent codicil. (Estate of Dubois, 94 Cal. App.2d 838 [211 P.2d 895]; see also 23 So.Cal.L.Rev. 427-428.) Rather than revoking intermediate codicils not mentioned, the later codicil republishes the will together with all valid intermediate codicils.
There is nothing in the codicil of July 15, 1963 which is inconsistent with the codicils of February 6 and 7, 1963 since the only provision in the codicil, other than the republication, is the exercise of a power of appointment in accordance with the terms of the will.
Respondents argue that the intention of the testator was to revoke the will. This intention is not expressed in the codicil itself nor, applying the rule of the Estate of Dubois, supra, can the intention be implied from *53 silence as to the codicils in the face of the express republication of only the will and the December 12th codicil. (3) Extrinsic evidence may be looked to, however, in order to ascertain the intention of the testator when the language of a will is ambiguous or uncertain. Extrinsic evidence may also be resorted to in order to disclose a latent ambiguity and once shown to resolve the ambiguity. (Estate of Russell, 69 Cal.2d 200, 206-207 [70 Cal. Rptr. 561, 444 P.2d 353].)
(2b) The latent ambiguity in the codicil of July 15, 1963, is the fact that it is described as the "Second Codicil." The existence of the codicils of February 6 and 7, 1963 reveal it to be the fourth rather than the second codicil. Extrinsic evidence in the form of testimony concerning the making of the will (Prob. Code, § 105; Estate of Boyd, 148 Cal. App.2d 821, 825 [307 P.2d 754]) and, in certain circumstances, oral declarations (Estate of White, 9 Cal. App.3d 194, 201 [87 Cal. Rptr. 881]) may be introduced to resolve the ambiguity thus revealed. The circumstances of the drafting of the codicil explain the misnumbering of the codicil since it is clear that the scrivener did not know of the existence of the earlier codicils and, therefore, labeled it the "Second Codicil." It follows necessarily that Jacob Wochos did not direct the revocation of the codicils.
The proponents of the admitted will and codicil testified that the purpose of the codicil was to establish that Jacob was exercising the power of appointment in his deceased wife's will. There was other testimony that Jacob Wochos said he wanted his estate to go to his two nephews. None of the statements indicates that Jacob Wochos thought the codicil of July 15, 1963 revoked the earlier codicils. At most they indicate that, had he remembered the codicils or if he knew the legal means of revoking these codicils, he would have done so. Courts may not, however, revoke a will left unrevoked any more than they can supply a provision omitted from a will whether inadvertently or intentionally. (See Estate of Moorehouse, 64 Cal. App.2d 210, 216 [148 P.2d 385]; Estate of Thomason, 245 Cal. App.2d 793 [54 Cal. Rptr. 229]; Estate of Wattson, 66 Cal. App.2d 743, 746 [153 P.2d 87]; Estate of Russell, supra, 69 Cal.2d 200, 214-215.)
The devise of the residue of the estate to all the nephews and nieces was clear and distinct. "[T]heir revocation could be effected only by express language (Prob. Code, §§ 72, 74) equally as clear and distinct as that originally used [citations] or by wholly inconsistent dispositions." (Estate of Dubois, supra, 94 Cal. App.2d 838, 842-843.) It would be useless to speculate upon the reason for the July 15, 1963 codicil. It is clear, however, that his attorney who drafted the last codicil was not drafting an instrument to effect a change in the dispositive provisions of the codicils of February 6 and 7, 1963, for he did not know of their existence. To hold that Jacob *54 revoked the earlier codicils by the codicil of July 15, 1963, would allow revocation by inadvertence in the form of a codicil misnumbered out of the draftsman's ignorance of the existence of other codicils.
We have concluded, therefore, that the February 6 and 7, 1963 codicils were not revoked by the July codicil.
(4a) The judgment of the trial court must be reversed for the further reason that there was substantial evidence supporting the jury's verdict that Jacob lacked testamentary capacity on July 15, 1963, the date of the execution of the codicil designated codicil number two.
(5) The adjudication of incompetence in the guardianship proceeding "raises an inference of testamentary incompetency as of the date of the finding." (Estate of Nelson, 227 Cal. App.2d 42, 55 [38 Cal. Rptr. 459]; see also Estate of Worrall, 53 Cal. App.2d 243 [127 P.2d 593].)
(4b) There was testimony that the reason for the guardianship proceeding was to prevent a designing person from taking advantage of Jacob. It is significant, however, that the petition was for the appointment of guardian of both the person and estate. If it was desired only to protect his estate, a petition for guardianship of the estate would have sufficed. Further, the petitioner for the guardianship chose guardianship proceedings rather than conservatorship proceedings, which latter proceeding would have accomplished the desired purpose of protecting him from designing persons without the necessity of a declaration of incompetency. (See Prob. Code, §§ 1701, 1751, 1752.)
There was also evidence that decedent's mental condition had not improved between the date of appointment of guardian and the date of the execution of the codicil of July 15, 1963. In fact, there was evidence of further mental and physical deterioration. The evidence disclosed that Jacob Wochos was afflicted with arteriosclerosis, a disease similar to advanced senility; that this disease was progressive, and that he evidenced loss of memory, impaired gait, and had filthy habits personally and in his home. At the time of execution of the July 15, 1963 codicil, the jury could reasonably have inferred that Jacob was unaware of his codicils of February 6 and 7, 1963, which were made only a few months earlier. This is evidenced by his failure to inform his then attorney of these codicils. The fact that Jacob forgot to mention two codicils which were the crux of his testamentary purposes in itself is an indication of mental incompetence which the jury could have considered in adjudicating lack of testamentary capacity. This circumstance, coupled with his being judicially declared an *55 incompetent some six months prior thereto and the testimony which tended to disclose that his mental condition had not changed since that determination of incompetency, was substantial evidence supporting the jury's verdict.
There was also evidence to the effect that Jacob had testamentary capacity, but the question before us in deciding the propriety of the judgment notwithstanding the verdict is not to decide the weight to be given conflicting evidence, but whether there was substantial evidence to support the jury's finding of testamentary incapacity on July 15, 1963.
"[T]he court cannot in such a case make an order notwithstanding the verdict if there is substantial evidence to support the jury's finding." (Estate of Powers, 81 Cal. App.2d 480, 481-482 [184 P.2d 319]; see also Estate of Lingenfelter, supra, 38 Cal.2d 571; Estate of Fritschi, 60 Cal.2d 367 [33 Cal. Rptr. 264, 384 P.2d 656].) All evidence favorable to the appellants must be accepted, and if the evidence so viewed is sufficient as a matter of law, the judgment notwithstanding the verdict must be reversed. (Estate of Hettermann, supra, 48 Cal. App.2d 263, 266.)
We have determined that there was such substantial evidence supporting the jury's verdict that Jacob Wochos lacked testamentary capacity on July 15, 1963. The trial court erred in granting the judgment notwithstanding the verdict.
This reversal of the trial court's decision as to the effect of the codicil of July 15, 1963 does not determine the disposition of the property.
The judgment is reversed and the matter is remanded to the superior court for further proceeding.
Draper, P.J., and Caldecott, J., concurred.
A petition for a rehearing was denied February 24, 1972, and the petition of the claimants and appellants for a hearing by the Supreme Court was denied March 22, 1972. Peters, J., was of the opinion that the petition should be granted.
NOTES
[*] Notice of time and place of hearing was shortened by order of the court.