[Civ. No. 11007. Second Appellate District, Division One.—June 16, 1936.]

In the Matter of the Estate of STELLA B. LA FETRA, Deceased. LLOYD S. LANTERMAN et al., Appellants, v. EVERETT E. LA FETRA et al., Respondents.

600

Oliver O. Clark for Appellants.

Ben F. Gray for Respondents.

WHITE, J., *pro tem.*—Stella B. La Fetra died testate November 9, 1933. Through the medium of a holographic will the testatrix made several specific bequests, after which follows the following provision in the will:

"Sixth—The remainder of my estate I wish equally divided among the living nieces and nephews—children of my husband's brothers and sister and my brother's children allowing C. W. La Fetra a nephew's portion. *Personal property I give to Harriet Lula Lloyd & Frank Lanterman—division to be made by F. D. & R. S. Lanterman. What no one wants give to charity—*"

The trial court found that the italicized portion of the will above quoted was interlined by the testatrix.

The present controversy centers about the interpretation to be given to the italicized portion of the foregoing provision. Appellants herein, together with Harriet Lanterman, are the consanguineous nephews and nieces of testatrix. Two of them, Frank and Lloyd Lanterman, petitioned the superior court for an order determining heirship, wherein it should be decreed that all of the personal property be distributed to them except an amount sufficient to administer the estate, it being provided in the will that "a sufficient amount to administer my estate to be taken from stocks and bonds standing in my name". Sixteen nieces and nephews of the deceased husband of testatrix filed objections to said petition, contending that by the aforementioned words in controversy here it was the intention of the testatrix to give to the four consanguineous nephews and nieces *only her personal effects.* The trial court found in favor of the objectors, and decreed that it was the intention of the testatrix to give only the *personal effects* to Harriet Lula Lloyd and Frank Lanterman, and that after paying the specific bequests provided for in the will, the remainder of the estate, subject to the costs of administration, be distributed in equal shares among the appellants and the remaining sixteen nieces and nephews From such order this appeal is prosecuted.

Appellants insist that the words "personal property", as used in the dispositive clause of the will in dispute, should be interpreted as they are defined in the Civil Code (secs. 657, 663; subd. 3 of sec. 14); while respondents urge that the words "personal property", as used in the disputed clause, should be limited to purely personal effects

In the interpretation of wills section 106 of our Probate Code enjoins upon courts the duty to view the testamentary words in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained; while technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention or discloses that the testator was unacquainted with such technical sense.

In determining the intention of the testatrix here we must, as appellants insist, stand by the words of the will, and no intention should be attributed to the testatrix which cannot reasonably be drawn from the language of the document itself; but it is generally recognized that a testamentary

instrument is to be examined with a view to discovering the decedent's testamentary scheme or general intention, and that the apparent meaning of particular words, phrases and provisions is to be subordinated to this scheme, plan or dominant purpose. (*Estate of Puett,* 1 Cal. (2d) 131, 133 [33 Pac. (2d) 825].) The technical import of words should not prevail over the obvious intent of the testator. In *Estate of Koch,* 8 Cal. App. 90 [96 Pac. 100], a bequest covering, in part, "all my belongings" was held not to include money, in view of the apparent intent of the testatrix to dispose of furniture, clothes, pictures, jewelry and things which she ordinarily used for her personal comfort. In *Andrews* v. *Schoppe* 84 Me. 170 [24 Atl. 805], where the will disposed of certain enumerated household articles, furniture, beds, and "all other articles of personal property", it was held that the latter words must be read in connection with the words preceding them, and that when so read and construed, the words did not include promissory notes found among the effects of the decedent. It was held in *Tallman* v. *Tallman,* 3 Misc. 465 [23 N. Y. Supp. 734], that, in view of other bequests in a will, a bequest of "all my personal property" referred only to household effects. ■ It must be borne in mind, of course, that the interpretation to be given a particular testamentary instrument must turn upon the language peculiar thereto, and that decisions passing upon instruments of varying terminology can be of little assistance other than to announce the rules of construction. The cases herein cited are of value to us in this case in that they indicate the propriety of applying to the phrase "personal property" a limited and restricted meaning and operation, consistent with the testatrix's evident intention.

■ We are satisfied from a reading of the particular bequest here involved that it was the desire and intention of the testatrix, as evidenced by the language employed, after making specific bequests, to give the remainder of her estate, both real and personal, to all "the living nieces and nephews—children of my husband's brothers and sisters and my brother's children allowing C. W. La Fetra a nephew's portion", and that when testatrix interlined her holographic will by inserting the words, "personal property I give to Harriet Lula Lloyd and Frank Lanterman—division to be made by F. D. & R. S. Lanterman. What no one wants give

to charity'', she intended thereby to give, as the trial court found, her personal effects to appellants. To our minds, this is borne out by reference to the second paragraph of the will, in which she made a bequest of specified personal property, viz., stocks, to these appellants. We are of the opinion that it is not reasonable to assume that had the testatrix intended all of her personal property to go to appellants she would have referred to such property in two paragraphs of the will, and we feel that it is but logical to conclude that had she so intended she would have so provided in a single paragraph. We are impressed with the inference, based on the propensities of people, that the bequest of certain of her personal property to appellants in the second clause of the will, coupled with the express language in the sixth paragraph directing an equal division of the remainder of her property, leads logically and inevitably to the conclusion that when the testatrix added the words in dispute here she intended thereby to give only her personal effects to appellants. Weight is also given this conclusion by the direction to her brothers to make the division of such property to appellants and the authority vested in them to give to charity such property as no one wanted. It does not seem to us reasonable to assume that the testatrix believed that any of the very valuable stocks and bonds embraced in her personal property would be rejected by appellants; while it is, in our opinion, reasonable to assume that she felt some of her personal effects or household goods might not be acceptable to the four nieces and nephews. This conclusion, in our opinion, is consistent with and does no violence to the expressed intention of the testatrix, because it harmonizes with decedent's apparent scheme or general intention. Frank D. Lanterman, executor under the will, a brother of decedent, and father of some of the appellants, testified that on March 18, 1933, the birthday of decedent, the latter stated to him that it was her desire that upon her death her household goods and personal effects be distributed in their entirety to appellants, save and except the furniture in the one room occupied by decedent's housekeeper, which latter effects were to go to the housekeeper.

The foregoing, we feel, is amply sufficient to support the lower court's finding that when the testatrix interlined her holographic will and inserted the disputed words, it was her

intention to give to the four consanguineous relatives her personal effects, and if none of the parties named wanted any part of said personal effects, to distribute such unwanted property to charity.

For the foregoing reasons, the order appealed from is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 13, 1936.