49 Cal.2d 333 (1957)
Estate of JOSEPHINE H. GRAHAM, Deceased. JEAN E. FITZGERALD, Appellant,
v.
SALVATION ARMY OF CALIFORNIA (a Corporation), Respondent.
L. A. No. 24386. 
Supreme Court of California. In Bank. 
Nov. 5, 1957.
 A. V. Falcone and Hugh E. McManus for Appellant.
 Meserve, Mumper & Hughes, J. Robert Meserve and Douglas M. Shumway for Respondent. *335
 TRAYNOR, J.
 Josephine H. Graham died January 6, 1955, at the age of 91 years, leaving as her only surviving relative her brother, Fred L. Graham, who is approximately 87 years old. Her estate was appraised at $157,925.92 and consists of real property valued at $40,000, an oil and gas lease valued at $150, home furnishings valued at $125, and stocks and bonds valued at $117,650.92.
 The decedent's formally executed will has been admitted to probate. After providing for the devise of three lots to a friend of the testatrix [fn. *] the will provides that the residue of the estate is to be held in trust for the benefit of the testatrix's brother during his life. Jean E. Fitzgerald, appellant herein, is named as executrix and trustee. Among the powers granted the trustee is the power to sell any part of the trust estate except the testatrix's home, which is to be retained as a home for the testatrix's brother. The will then provides:
 "Twelth: When my said brother shall have died, then the Trustee shall distribute the remaining portion of the Trust as follows: To Jean E. Fitzgerald, the sum of Two Thousand Dollars ($2,000.00) and any part of the personal property she may desire. The residue of my property and estate to go to The Salvation Army of California, a religious and charitable corporation."
 The matter in dispute is the meaning of the phrase "personal property" in the foregoing provision of the will. Appellant contends that it includes all the property except realty. Respondent contends that it includes only the home furnishings and not the stocks and bonds. The trial court found this part of the will ambiguous and on the basis of the language in the will and extrinsic evidence found that "[w]hen testatrix used the words 'personal property' ... she intended this phrase to be used in its popular sense to mean personal effects, furniture, furnishings and other tangible personal property in and about the premises of her home. Testatrix did not mean that the words 'personal property' ... included intangible personal property such as cash, stocks, securities and bank accounts." Appellant contends that the will is clear and unambiguous, that the court should not have received extrinsic evidence, and that "personal property" is a technical term and under section 106 of the Probate Code must be taken to mean "every kind of property that is not real." (Civ. Code, 663.) The applicable part of section *336 106 provides: "... technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense."
 The ambiguity in the phrase "personal property" is apparent from several cases that discuss the different meanings ascribable to it. (See Estate of Marin, 69 Cal.App.2d 147, 150 [158 P.2d 412]; Estate of Duraind, 51 Cal.App.2d 206, 211-212 [124 P.2d 330]; Estate of Combs, 136 Cal.App.2d 286, 291 [28 P.2d 711]; Estate of Kruger, 55 Cal.App.2d 619, 623 [131 P.2d 619]; Estate of La Fetra, 14 Cal.App.2d 599, 602-603 [58 P.2d 678]; Estate of Puett, 1 Cal.2d 131, 134 [33 P.2d 825].) [1] Moreover, the very code section upon which appellant relies contemplates the admission of extrinsic evidence, for only by extrinsic evidence can it be determined whether a testator was acquainted with the technical sense of the words he used, and proof as to who drew the will must depend largely upon extrinsic evidence.
 [2] It appears from the extrinsic evidence that the testatrix was an intelligent person and that she knew what property she owned. She admired the work of the Salvation Army. The testatrix appointed appellant her agent in various real estate transactions, was friendly with her, and apparently reposed trust and confidence in her. Two prior wills were drafted for the testatrix by attorneys. [fn. *] There was no evidence that the testatrix consulted an attorney with regard to the will admitted to probate. This will was apparently typed by a friend of appellant on a typewriter in appellant's home, where the friend also resided. [fn. ] It was formally executed in duplicate in an escrow office customarily patronized by appellant. No attorney was present when the will was executed. From this evidence and the fact that no attorney's name appears anywhere on the will and from certain language contained in the will, the trial court found that the will admitted to probate was not drafted by an attorney. This inference could reasonably be drawn from the evidence, and the trial court's finding is, therefore, conclusive on this point. *337
 As pointed out by appellant the evidence falls short of establishing that the will was drawn solely by the testatrix and that she was unacquainted with the technical sense of the words she used. The trial court, however, did not find that the will was drawn solely by the testatrix and that she was unacquainted with the technical sense of the words used. Its oral opinion makes clear that it relied on the part of section 106 that provides: "... technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention. ..." (Italics added.)
 [3] The trial court's determination is sustained by reasonable inferences that can be drawn from the will itself. The testatrix provided that appellant was to receive "Two Thousand Dollars ($2,000.00) and any part of the personal property she may desire." It is a fair inference from this language, referring separately to dollars and to the personal property, that the testatrix did not regard "the personal property" as including dollars, and this inference supports the trial court's finding that she used the phrase "personal property" in "its popular sense to mean personal effects, furniture, furnishings and other tangible personal property in and about the premises of her home." (Cf. Estate of Kruger, supra, 55 Cal.App.2d at 623.) [4] The provision in the will giving appellant as trustee the power to sell any of the assets of the trust estate except the residence also supports the court's finding. Thus, appellant has the power to convert the entire estate, except the residence, to personalty. If "the personal property" were given the meaning contended for by appellant, she could elect to receive virtually the entire estate to the exclusion of respondent. We do not believe that it can reasonably be inferred that the testatrix used the phrase "personal property" in its technical sense so that appellant could defeat the gift to the Salvation Army should she elect to do so. Had the testatrix intended to give appellant that election she would have done so directly rather than have made it dependent on the court's concluding that she intended the ambiguous phrase "personal property" to be taken in its technical sense even though she used it in a context that clearly indicates a contrary intention. [5] Moreover, the testatrix left to appellant only that "part of the personal property she may desire." Such language is more appropriate to a gift of personal effects, furniture and furnishings, many items of which a legatee might not want, than to a gift of *338 valuable securities, which ordinarily a legatee would not be expected to reject. (Estate of La Fetra, supra, 14 Cal.App.2d at 603.)
 The judgment is affirmed.
 Gibson C.J., Shenk, J., Carter, J., Schauer, J., Spence, J., and McComb, concurred.
NOTES
[fn. *] *. This gift has lapsed because the devisee predeceased the testatrix.
[fn. *] *. On appellant's objection the prior wills were excluded from evidence.
[fn. ] . After expert testimony that the will was typed on her typewriter, the friend testified that she must have typed it, although she had no recollection of doing so.