[Civ. No. 25801. Second Dist., Div. Two. June 4, 1962.]

Estate of VIVIAN N. NIELSEN, Deceased. ELIZABETH DUNN, Claimant and Appellant, v. NORMAN NIELSEN, Claimant and Respondent.

Ralph N. Nickerson for Claimant and Appellant.

Joseph L. Greene, J. W. Mullin, Jr., and Donald C. Kimber for Claimant and Respondent.

FOX, P. J.—This is a proceeding to determine heirship and to construe a will. On December 23, 1957, Vivian Nielsen executed an holographic will in which she devised and bequeathed certain property to her brother and her husband. On December 24, 1957, she effected a codicil to the holographic

will by striking out certain terms and adding others. The will as modified appears as follows:

> "Los Angeles —
> "December 23 — 1957

"In case of my death I wish my
(Dec 24 VN)
real property in Culver City ~~and all~~
(Dec 24 VN)
~~of my personal property~~ to be
equally divided between my brother
Lloyd F. Dunn of Dinuba,
and Norman Nielsen[1] of 265 South
St Andrews Pl. Los Angeles.
Dec. 24. I want all my
furniture, clothes & per- "Vivian L. Nielsen
sonal property including 5270 Inglwd Blvd
my car to go to Elizabeth Culver City"
Dunn (V L N)"

On December 12, 1958, Forest Ray Duncan, a former husband of decedent (they were divorced in 1925), executed a will in which was contained the provision "all of my shares of Sears Roebuck & Co. stock to my former wife Vivian Nielsen." On January 29, 1959, Forest Ray Duncan died and his will was admitted to probate. At the date of his death, his former wife, Vivian Nielsen, was surviving and the gift of said stock vested in her, subject to administration.

On August 26, 1959, Vivian Nielsen died and her aforementioned will was admitted to probate on October 9, 1959.

On May 18, 1960, this heirship proceeding was initiated by a petition to determine heirship filed by respondents Dorothy Duncan Riggs and Roy Evan Duncan, in the matter of the Estate of Vivian Nielsen, deceased, on the theory that Mr. Duncan was a previously deceased spouse of the decedent under the provisions of Probate Code section 229. In response to such petition two statements of interest were filed, one by appellant Elizabeth Dunn, and another by her husband, Lloyd F. Dunn (who is not a party to this appeal). A hearing was held on such petition and statements of interest before Honorable Frank S. Balthis, Judge, on June 29, 1960, which

---

[1]An interlocutory decree of divorce had been granted between decedent and Norman Nielsen on Oct. 16, 1947, but no final decree was ever entered.

was followed by a decree determining heirship and interests in estate, and a judgment of dismissal of the petition, dated August 10, 1960. The trial court determined, however, that the stock did not come from a spouse, in the sense that word is used in section 229, and therefore, that petitioners were not heirs of Mrs. Nielsen and had no interest in her estate.

Subsequently, respondent Norman Nielsen moved for and obtained an order vacating judgment in its entirety, dated October 21, 1960, and permitting him to file his statement of interest.[2]

This phase of the matter was heard on November 17, 1960, before Judge Balthis. From this point forward, as will be observed, the contest was between appellant Elizabeth Dunn (decedent's sister-in-law) and respondent Norman Nielsen. The November hearing was followed by the decree of January 17, 1961. Elizabeth Dunn has appealed from portions of that decree. Said decree determined that Riggs and Duncan were not heirs of the decedent, and had no interest in her estate. They have not appealed.

The primary issue on this appeal involves the construction of the codicil to the will. Did the expression "personal property" include intangibles such as shares of stock, cash, bank accounts and savings and loan accounts?

The trial court found, *inter alia*:

"That decedent died intestate as to certain personal property, described as 749 shares of Sears, Roebuck & Co. stock;

"That the words 'personal property' as used by the decedent in her last will and Testament do not include tangibles [*sic*] such as 749 shares of Sears, Roebuck & Co. stock, cash, bank accounts and/or savings and loan accounts. That as to such items decedent died intestate;

"That the bequest to ELIZABETH DUNN in the decedent's will by using the words 'I want all my furniture, clothes and personal property, including my car, to go to Elizabeth Dunn' was intended to include only personal effects and does not mean or include such personal property as money, stock and bank accounts."

The trial court's conclusions of law which are here relevant are as follows:

"2. By the terms of said Will, a portion of said decedent's estate is devised and bequeathed as follows:

---

[2]This motion to vacate was made on the grounds of mistake, inadvertence, surprise and excusable neglect in that Norman Nielsen thought he was divorced and therefore thought he had no rights.

To LLOYD F. DUNN and NORMAN NIELSEN, each respectively, an undivided one-half interest in the real property in Culver City, County of Los Angeles; and to ELIZABETH DUNN, all of the furniture, clothes, automobile and other personal effects.

"3. That except to the extent that said decedent so disposed of her estate by the specific devises and bequests aforementioned, she died intestate.

"4. That NORMAN NIELSEN, surviving husband, and LLOYD F. DUNN, surviving brother, are the sole heirs of said decedent, and upon the death of said decedent there vested in them in equal shares, subject to administration, pursuant to Section 223 of the Probate Code of the State of California, all of the property in said estate and inuring to said estate not specifically devised or bequeathed including but not confined to cash, bank accounts, savings and loan accounts, 749 shares of Sears, Roebuck & Co. common stock, including accrued dividends thereon and the real property in Santa Cruz County, California."

■ "In the interpretation of a will, ascertainment of the testator's intention is the fundamental rule of construction, to which all others are subordinate. (*Estate of Salmonski*, 38 Cal.2d 199, 209 [238 P.2d 966] ; *Estate of Lawrence*, 17 Cal. 2d 1, 6 [108 P.2d 893] ; *Estate of Klewer*, 124 Cal.App.2d 219, 221 [268 P.2d 544, 41 A.L.R.2d 941] ; Prob. Code, § 101.)

■ In ascertaining such intention we naturally first look to the language used in the will." (*Estate of Schuster*, 137 Cal.App.2d 125, 128 [289 P.2d 847].)

■ The holographic will here involved, although on one sheet of paper, contained two different provisions made on two different days. Under these circumstances, section 101 of the Probate Code applies. That section states: "Several testamentary instruments executed by the same testator are to be taken and construed together as one instrument. A will is to be construed according to the intention of the testator...."

In the case at bench, looking at the document, the trial court concluded that the prime recipients of testatrix' bounty were her husband and brother. This is manifest in her original will by which she left substantially all of her estate to them. As an afterthought it appears that she decided to leave her brother's wife, the appellant, her personal effects—those things that a woman would especially appreciate and be able to use, such as her clothes, furniture and car. ■ She could not

have intended the Sears & Roebuck stock to pass under her will because she had no knowledge of the stock at the time the will was executed. In the *Estate of Sullivan,* 86 Cal.App.2d 890, 894 [195 P.2d 894], the court stated: "In order to ascertain the intention of the testatrix the court must place itself as nearly as possible in the position she occupied when the will was executed."

The general rule in reviewing the trial court's construction of a will was stated in *Estate of Sullivan, supra,* (pp. 894-895) : "If the construction given to a will by the trial court is tenable and appears to be reasonable and consistent with the intent of the testator, a reviewing court will not substitute a different interpretation even though it seems possible and equally tenable. [Citations.]"

The trial court construed the term "personal property" in the provision "I want all my furniture, clothes and personal property including my car to go to Elizabeth Dunn" in its popular sense and not in its technical sense. "A layman's will frequently refers to 'personal property,' and the term will usually be given its narrow popular meaning of 'personal effects,' such as household goods, rather than the legal meaning of everything which is not real property." (4 Witkin, Summary of California Law, § 115, p. 3110.) There are many cases supporting this interpretation of the expression "personal property." (*Estate of Graham,* 49 Cal.2d 333 [316 P.2d 945] ; *Estate of Barbikas,* 175 Cal.App.2d 285 [345 P.2d 968] ; *Estate of Marin,* 69 Cal.App.2d 147 [158 P.2d 412] ; *Estate of LaFetra,* 14 Cal.App.2d 599 [58 P.2d 678] ; *Estate of Lovejoy,* 38 Cal.App.2d 69 [100 P.2d 547] ; *Estate of Puett,* 1 Cal.2d 131 [33 P.2d 825].)

In the *Graham* case, there was a provision in the will to the effect that after the death of a life beneficiary the trustee should receive $2,000 and any of the personal property she may desire. The court held the words "personal property" were used in the popular sense to mean personal effects, furnishings and other tangible personal property and did not include stocks and bonds.

In the *Barbikas* case, *supra,* the testator's expression "personal property" in an holographic codicil giving a leasehold interest and personal property to a niece was interpreted in the popular sense to mean personal effects, furniture and furnishings rather than in the technical sense to include stocks and bonds.

In the case of *Estate of Marin, supra,* the court construed

the term "personal property" in a will bequeathing to a doctor all of testatrix' "personal property, household furniture, furnishings, bric-a-brac ornaments and equipment" located on realty devised to him to be used in its popular sense and hence, did not include war bonds.

"The conclusion of the court is given added justification by the application of the rule of *ejusdem generis*. In referring to the use of the expression, personal property, in a will it is stated in 3 Page on Wills (3d ed. 1941) § 964, p. 45, 'A gift of personal property in general terms together with an enumeration of certain classes of personal property is generally held to be limited to articles of the classes which are enumerated specifically.' " (*Estate of Marin,* 69 Cal. App.2d 147, 150-151 [158 P.2d 412].) In the instant case the term "personal property" should be limited, therefore, to property having the same generic classification as clothes, furniture and car.

In view of the language used in the will, the circumstances surrounding its execution, and the relationship of the parties, we are satisfied that the trial court was justified in ruling that the expression "personal property" was used in its ordinary and nontechnical sense. (See cases cited *supra.*)

The policy against intestate succession, expressed in Probate Code section 102, is not persuasive in this case because, if the property passes by intestate succession, the prime objects of the testatrix' bounty, her brother and her husband, will share equally in the stock, bank accounts, and savings and loan accounts, under Probate Code section 223. It seems, therefore, that the trial court's conclusion that this stock should pass by intestate succession is more likely to give effect to testatrix' intention than if the term "personal property" were construed to include such stock. (See *Estate of Klewer,* 124 Cal.App.2d 219, 223 [268 P.2d 544, 41 A.L.R. 2d 941].)[3]

Appellant attempts to appeal from certain findings of fact and conclusions of law. In *Brice* v. *Department of Alcoholic Beverage Control,* 153 Cal.App.2d 315, 319 [314 P.2d 807], the court said: "The case law is unanimous to the effect that an appeal does not lie from the findings of fact

[3]That the testatrix was not adverse to intestate succession is further manifested in the fact that certain of her property, i.e., the real property in Santa Cruz, could not be included in the will under any construction and therefore, must pass by intestacy.

or conclusions of law. [Citations.]'' Therefore, the purported appeal from the findings of fact and conclusions of law must be dismissed.

The decree determining heirship is affirmed.

The purported appeal from the findings of fact and conclusions of law is dismissed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied June 28, 1962, and appellant's petition for a hearing by the Supreme Court was denied August 1, 1962.