[Civ. No. 34639. Second Dist., Div. Four. Aug. 28, 1970.]

WILDA J. GOSNEY et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

922

**COUNSEL**

Charles E. Jones, David A. Binder, Michael Henry Shapiro, William T. Rintala, Stanton J. Price and Valerie Vanaman for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Anthony M. Summers, Deputy Attorney General, John D. Maharg, County Counsel, and Paul G. Seehusen, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**DUNN, J.**—Two appeals are before us. The first is from an order of the trial court denying issuance of a preliminary injunction sought by appellants.[1] The second notice of appeal involves a judgment discharging an

---

[1]Such an order is appealable. Code of Civil Procedure, section 904.1, subdivision (f), formerly Code of Civil Procedure. section 963; *American Trading Co.* v. *Superior Court* (1923) 192 Cal. 770, 772 [222 P. 142].

alternative writ of mandate and denying issuance of a peremptory writ. The appeal, however, is not from the entire judgment but "from that portion of the judgment . . . which decreed as follows: 'FINDINGS OF FACT'." The notice of appeal goes on to recite the language of findings V-XII, inclusive, and conclusions I-V, inclusive.

## I. *Appeal From Denial Of Preliminary Injunction*

■ The grant or refusal of a preliminary injunction is, generally speaking, within the discretion of the trial court and its order may be reversed on appeal only if abuse of discretion is shown. ■ As stated in *Lagunitas Water Co.* v. *Marin County Water Co.* (1912) 163 Cal. 332, 336-337 [125 P. 351]: "But a preliminary injunction is not a matter of right. It is addressed to the discretion of the court. In denying it the court does not necessarily determine anything as to the merits of the main controversy. It may conclude that from the evidence produced on the application for a preliminary injunction it does not appear that pending a trial any possible injury can result to the plaintiff, and may decline to grant an injunction until after the trial of the cause." And in *Hueneme etc. Ry.* v. *Fletcher* (1924) 65 Cal.App. 698, 703 [224 P. 774], the court said: "It is well settled that a preliminary injunction will not issue in a doubtful case. 'The rule has been frequently laid down broadly that a preliminary injunction will not issue where the right which the complainant seeks to have protected is in doubt, where the right to the relief asked is doubtful, or except in a clear case of right'. . . . It is also a settled proposition of law that a preliminary injunction may not be had as a matter of right, but that the question whether such an injunction shall be granted or refused rests in the sound discretion of the court." (Additionally see: *Santa Cruz Fair Bldg. Assn.* v. *Grant* (1894) 104 Cal. 306, 308-309 [37 P. 1034]; *McCoy* v. *Matich* (1954) 128 Cal.App.2d 50, 52 [274 P.2d 714]; *Schwartz* v. *Arata* (1920) 45 Cal.App. 596, 601 [188 P. 313].)

■ It is, of course, true that the trial court has no discretion to act capriciously; it is required to exercise its discretion in favor of the party most likely to be injured. (*Riviello* v. *Journeymen Barbers etc. Union* (1948) 88 Cal.App.2d 499, 510 [199 P.2d 400]; *Ellis* v. *American Federation of Labor* (1941) 48 Cal.App.2d 440, 446 [120 P.2d 79].) Where the plaintiff shows he will suffer irreparable damage unless defendant is restrained pending trial, the relief sought should be granted. (*Porter* v. *Jennings* (1891) 89 Cal. 440, 443-445 [26 P. 965]; *Carolina Pines, Inc.* v. *Catalina Pines* (1932) 128 Cal.App. 84, 89 [16 P.2d 781].) Where, however, it further appears that, to grant it, would place an unwarrantable burden under the circumstances upon defendant, then the court must weigh

the two sides of the issue and exercise its discretion and judgment. (*Santa Cruz Fair Bldg. Assn.* v. *Grant, supra.*)

■ We examine the record to determine if the trial court abused its discretion. On September 13, 1968, plaintiffs filed a verified complaint, being a class action seeking injunctive and declaratory relief and issuance of a writ of mandate. The plaintiffs are persons eligible for assistance under the Aid to Families with Dependent Children (AFDC) program (Welf. & Inst. Code, §§ 11200-11507). Defendants are the State of California and its Department of Social Welfare (SDSW), the County of Los Angeles and its Department of Public Social Services (DPSS), and certain officers of those political subdivisions and agencies.

In their verified complaint plaintiffs alleged: On or about August 1, 1967, in several DPSS districts of the county, defendants converted from a manual system to a computerized data processing system for the preparation and posting of AFDC warrants;[2] because of defendants' failure properly to plan, supervise and operate the computerized system, many members of the class represented by plaintiffs did not receive warrants on time, or at all, or in the correct amount; in spite of their knowledge of the high rate of such computer-caused errors, defendants failed either to effect substantial improvements in the computerized system so as to minimize the error rate, or to establish an adequate "fail-safe" system to provide timely and accurate payments in the event of computer errors; such omissions on the part of defendants constituted a breach of their duty to provide timely AFDC warrants in the correct amount.

The complaint contained five causes of action, all of which included the foregoing allegations. Additionally, in the first, second and fifth causes of action it was alleged an actual controversy existed between the parties as to whether defendants' operation of the computerized system and their failure to provide a "fail-safe" system constituted a breach of their duty to make timely and correct payments of AFDC benefits. In the third cause of action it was alleged that defendants intended to extend use of the computerized system to certain DPSS districts still using the manual system of warrant disbursement. In the fourth cause of action it was alleged that because of defendants' breach of their duty to provide timely and correct AFDC warrants, the county was required to expend its funds to supply emergency aid to those who failed to receive warrants, and that such expenditure constituted waste because county funds so used were not

---

[2]For some time prior to commencement of the action, all AFDC warrants had been issued by data processing equipment. The computerized data processing system described in the complaint simply added computation of the actual case budget (*i.e.*, the grant) to the previous tasks of the computer.

supplemented by state or federal moneys, as were the regular AFDC warrants.

Plaintiffs sought the following relief: (1) as to the first four causes of action, preliminary and permanent injunctions enjoining defendants from improperly or negligently operating and supervising the computerized data processing system, requiring them to establish and maintain an alternative "fail-safe" system to assure timely and accurate payment of AFDC benefits in the event of failure of the computerized system to provide such benefits, and enjoining them from extending use of the computerized system unless they properly operated it and provided a "fail-safe" system; (2) as to the fifth cause of action, alternative and peremptory writs of mandate ordering defendants properly to operate the computerized system and to establish an alternative "fail-safe" system;[3] and (3) as to all causes of action, a declaration that the manner of defendants' operation of the computerized system constituted breach of their duty to provide timely and accurate payments of AFDC benefits.

The court issued an alternative writ of mandate and an order to show cause as to the preliminary injunction. Defendants filed an answer denying the allegations of the complaint here pertinent, at the same time filing a general demurrer. (Code Civ. Proc., §§ 430, 431.) Both sides filed declarations supporting and opposing issuance of the injunction. A hearing was had regarding issuance of the writ of mandate and a preliminary injunction, and to dispose of the demurrer. After the hearing, the alternative writ of mandate was discharged and a peremptory writ denied. The preliminary injunction was denied. The demurrer was sustained as to the first four causes of action on the ground of failure to state any cause of action, the minute order stating that the relief sought therein was encompassed in the fifth cause of action. Plaintiffs were given 10 days to amend, but did not do so.

As noted, the declarations filed were in conflict. Defendants showed, among other things, that the increase in workload over the years was enormous, but that errors resulting in "problem cases" had been considerably reduced, both numerically and by percentage, with experience and procedural changes. For example, the AFDC program increased from 30,625 "cases" in July 1963 (including 87,405 children and 26,761 adults) to 79,754 "cases" in July 1968 (including 220,626 children and 81,455 adults). In August 1968 there were 80,960 "cases." During August, 1968 and the five months preceding, the increase in operations was pronounced.

[3]We agree with the trial court's conclusion that plaintiffs seek relief under Code of Civil Procedure, section 1085, not under Code Civil Procedure, section 1094.5 ("administrative mandamus"). (*Gong* v. *City of Fremont* (1967) 250 Cal.App.2d 568, 572-573 [58 Cal.Rptr. 664].)

Thus, in March 1968, 106,012 warrants for the payment of $9,578,169.3⁹ were issued to recipients. In August, 118,813 warrants were issued to pay $10,490,475.64. The number of "problem cases" decreased from 4,065 to 830, and the percentage of "problem cases" to warrants issued dropped from 3.83 percent to 0.69 percent.

The number of changes (in addresses, recipients, amounts to be paid and the like) amounted, in August, alone, to 108,000 changes. Of this number, 5,222 were added as newly approved recipients and 3,650 were terminated. "Prior to changing the system, all such case changes were processed manually. The anticipated and realized increase in AFDC caseload and the growing complexity of this program with its attendant laws and regulations would have made continuation of the prior [manual] system unmanageable."[4]

To require defendants, by preliminary injunction, to adopt new procedures pending trial well could have resulted in an increase in problem cases, if due only to the time-lag in familiarization. The tests and studies of the system which would be needed to effect any change could have taken months and even several years, since it was shown that many years were needed to develop the system in use at the time plaintiffs' complaint was filed. Furthermore, defendants' declarations showed there was a constant and continuing review of procedures to increase the system's efficiency and reduce its shortcomings. Improved results were being produced.

Any changes pending trial would have been of dubious benefit to plaintiffs and, indeed, could have worked to their detriment.

We have touched upon only some highlights of the factors disclosed by the record. Examining these factors and the underlying record we cannot say that the trial court ruled improperly, let alone abused its discretion, by denying to plaintiffs the preliminary injunction which they sought.

II. *Appeal From "Judgment" Denying Issuance Of A Peremptory Writ Of Mandate And Discharging Alternative Writ*

■ The complaint was framed in five causes of action. The trial court sustained defendants' general demurrer to the first four causes of action, giving plaintiffs leave to amend, and ordering "judgment" for defendants on the fifth cause of action in which plaintiffs sought relief by mandate. There are several reasons why appellate relief must be denied.

First, the appeal is defective. The notice does not purport to appeal

---

[4]Declaration of the administrative deputy, DPSS.

from the judgment but only from a claimed portion of it, namely, the trial court's findings and conclusions. However, the findings and conclusions are no part of the judgment here. While it is true that findings and conclusions may be included within a judgment and need not be set forth in a separate instrument,[5] here, they are contained in a separate instrument. The judgment refers to, but does not incorporate, the court's findings and conclusions, stating, ". . . and the court being fully advised in the premises and having made and caused to be filed its written findings of fact and conclusions of law; It Is Hereby Ordered, Adjudged and Decreed that the Alternative Writ of Mandate granted herein is discharged and that the peremptory writ applied for herein is denied. . . ." Thus, the judgment merely recites, as a fact, that findings have been made; those findings are not adopted as part of the judgment.

No appeal may be taken from findings and conclusions but only from the judgment that they support. It is the judgment, not the findings, which is appealable. (*Muchenberger* v. *City of Santa Monica* (1929) 206 Cal. 635, 646 [275 P. 803]; *Thompson* v. *Boyd* (1963) 217 Cal.App.2d 365, 371 [32 Cal.Rptr. 513]; *Estate of Cuneo* (1963) 214 Cal.App.2d 381, 383 [29 Cal.Rptr. 497]; *Estate of Nielsen* (1962) 204 Cal.App.2d 357, 363-364 [22 Cal.Rptr. 260, 94 A.L.R.2d 1100]; *Brice* v. *Department of Alcoholic Beverage Control* (1957) 153 Cal.App.2d 315, 319 [314 P.2d 807]; *Estate of Murphy* (1942) 50 Cal.App.2d 440, 441 [123 P.2d 129]; *Ouzoonian* v. *Vaughan* (1923) 64 Cal.App. 369, 374 [221 P. 958].)

Secondly, while an instrument entitled "Judgment" was signed and filed by the court it is not a true judgment but an order mistitled "Judgment." A "judgment" ordinarily disposes of an entire action, with certain exceptions not here pertinent. It will be recalled a general demurrer was sustained to the first four causes of action of the complaint, giving leave to amend. The purported judgment does not dispose of these causes of action and there has been no final disposition of them. "It has been said of subsection 1 of section 963 of the Code of Civil Procedure, authorizing an appeal from 'a final judgment' that 'This provision states the *final* judgment rule, or rule of *one final judgment,* a fundamental principle of appellate practice in the United States. The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." (*Brown* v. *Memorial Nat. Home Foundation* (1958) 158 Cal.App.2d 448, 455 [322 P.2d 600, 72 A.L.R.2d 997].) And as said in *Murphy* v. *Fong Shuck* (1957) 151 Cal.App.2d 64, 65

---

[5]*Estate of Exterstein* (1934) 2 Cal.2d 13, 15-16 [38 P.2d 151]; *Baron* v. *Baron* (1970) 9 Cal.App.3d 933, 937 [88 Cal.Rptr. 404]; *Estate of Sandersfeld* (1960) 187 Cal.App.2d 14, 21-22 [9 Cal.Rptr. 447].

[311 P.2d 80]: "Since the issue is jurisdictional, it is incumbent upon this court to determine whether or not we have a final judgment in the case from which an appeal may be taken. This necessitates a review of the pleadings and of pertinent parts of the record." (Also see: Witkin, Cal. Procedure (1967 Supp.) p. 886, Appeal, § 10.) It is true that the Legislature, in redrafting the language of the Code of Civil Procedure relating to civil appeals, omitted use of the word "final." Section 904.1 reads: "An appeal may be taken from a superior court in the following cases: (a) From a judgment. . . ." Former section 963 stated that an appeal could be taken "[f]rom a final judgment. . . ." We do not interpret omission of the word "final" from the new section as indicating an intent on the part of the Legislature to attempt to dispense with the final judgment rule.

As we earlier stated in *Turner* v. *Los Angeles Realty Board, Inc.* (1965) 233 Cal.App.2d 755 at p. 758 [43 Cal.Rptr. 919]: ". . . but a disposition which leaves undetermined essential issues is not final, even though it purports to dispose of some issues. . . . It is the latter doctrine which applies here. While the orders before us purport to determine the right of plaintiffs to a writ of mandate against one defendant, they not only leave undecided the issue of the right to that writ against a codefendant, but they also leave undetermined the right of plaintiffs to declaratory relief and to damages against LARB as well as against its codefendant parties. They are therefore, not a 'final' disposition of the litigation as between plaintiffs and LARB." The purported judgment appealed from contains no disposition of the demurrer. The first four counts of the complaint are thus still pending.

It may not be assumed appellants intended to appeal from the order sustaining the demurrer and, even if they did, no appeal lies from such an order. (*Rittersbacher* v. *Board of Supervisors* (1934) 220 Cal. 535, 539 [32 P.2d 135]; *Beazell* v. *Schrader* (1962) 205 Cal.App.2d 673 [23 Cal. Rptr. 189]; 3 Witkin, Cal. Procedure (1954) p. 2162, Appeal, § 19.)

Appellants' appeal from the order denying a preliminary injunction was a proper one, being an appeal on an incidental matter not vitally affecting the merits of the case. The appeal did not deprive the trial court of jurisdiction to proceed with those portions of the action still pending before it. Accordingly, the trial court retained jurisdiction to determine if a permanent injunction, or any other relief prayed for in the first four causes of action of the complaint, should be granted on the merits. (*Gray* v. *Bybee* (1943) 60 Cal.App.2d 564, 571 [141 P.2d 32]; *General Elec. Co.* v. *Federal Emp. etc. Co.* (1955) 132 Cal.App.2d 649 [282 P.2d 941]; 1

Witkin, Cal. Procedure (1954) p. 879, Provisional Remedies, § 36; 3 Witkin, Cal. Procedure (1954) pp. 2142-2145, Appeal, §§ 2, 3.)

The order denying issuance of a preliminary injunction is affirmed. The appeal from the purported judgment, denying issuance of a peremptory writ and discharging an alternative writ of mandate, is dismissed.

Files, P. J., and Jefferson, J., concurred.